Good morning. Welcome to the Fifth Circuit. I'm Judge Dennis together with Judge Weiner and Judge Duncan. We're your panel for argument this morning and your case is Susan versus Adam Capital Management Fund Advisors. We'll hear first from Mr. Michael Berry for Susan. Uh, hello, your honors. Uh, Michael Berry, may it please the court. Michael Berry from Grant and Eisenhoffer in Wilmington, Delaware for plaintiff. Susan, why not? The district court's decision granting defendants motion to dismiss should be reversed because the district court applied the wrong legal standard when evaluating the purported independence of the special committee and the trustees that appointed that committee and erred in determining the special committee's investigation of plaintiff's litigation demand, which failed to utilize the most basic investigatory tools and in which the committee members themselves are largely absent and which resulted in a report that was void of factual support was reasonable for purposes of section 7.44 of the Massachusetts Business Corporation Law. My presentation today will focus on two areas. First, the appropriate standard for determining independence under section 7.44. And second, the failings of the report. Section 7.44 of the NBCL establishes a statutorily defined procedure by which a Massachusetts corporation can seek dismissal of a derivative claim. Crucial to that analysis is whether or not the directors are independent as that term is defined in the statute. As used in 7.44, the term independent means both free of domination and control and second, disinterested, not having an interest direct or indirect into the transaction being evaluated. How do I know that? Because comment one to section 7.44 expressly says only the word independent has been used because it is believed that the word necessarily also includes the no interest in the transaction. Massachusetts courts applying section 7.4 have recognized that issue. And in fact, the district court acknowledged that in citing the Blake versus Friendly Ice Creams case from Massachusetts Superior 2006. But instead of applying that standard in section 7.44, instead of applying the standard of independence required under section 7.44 of the NBCL in determining a motion to dismiss a derivative claim under section 7.44 of the NBCL, the district court rejected the independent standard that is required by section 7.44 of the NBCL. Instead, the district court looked to a different statute in a different section of the Massachusetts general laws in a different chapter to take the independent standard for an interested person as defined by the Investment Company Act of 1940. And the court looked to section 2B of chapter 182. The Massachusetts Business Corporations Act is chapter 156D, completely different chapter. The court's adoption or use of the ICA definition of interested person for purposes of evaluating independence under section 7.44 is wrong for three reasons. First, if we're going to use section 7.44 to apply to Massachusetts business trusts, the defendants and the district court should not be allowed to pick and choose what sections of the statute they want to apply. The text of section 7.44, this text of section 7.44 does not itself apply to business trusts. We're applying that statute because the Supreme Court of Massachusetts said it will apply. Mr. Berry, so speaking of the text, doesn't section 2B specifically apply to trustees, quote, when making any determination or taking any action as why is it a mistake then to apply section 2B? Well, for the very specific reason that the rules of statutory construction that you're talking about that was relied on by the district court doesn't really make sense in this case because the statute that you're looking at, section 7.44, by its terms also doesn't apply to Massachusetts business trusts. So what we're faced with is a situation where the Supreme Court of Massachusetts says, yes, we're going to apply the statute that by its term doesn't say so, but we're going to say you have to use section 7.44. So to the extent there's any ambiguity as to what the Supreme Court meant when it says you're going to apply section 7.44 to Massachusetts business trusts, well, let's ask them. What is the Mississippi, sorry, Fifth Circuit, what's the Massachusetts Supreme Court decision that you're referring to that said we will apply 7.44? At the top, well, I'm sorry, Your Honor, I actually should have that at my fingertips, but the, sorry. I guess, and while you're thinking about that, I guess, is that decision or decisions, are those addressing whether a trustee is interested or not? Halabian v. Berv, 457 Mass. 620, Massachusetts Supreme Court, 2010. Right, right, yeah, Halabian v. Berv, got it. Now, was independence really an issue in that case? Independence is always an issue in section 7.44 analysis, as a matter of fact. Right, I just thought the court, I thought the court there said, look, it's obviously there was no independence issue here. The majority of the board was not, was independent. Yeah. So in other words, it wasn't drilling down on the commission. It wasn't drilling down, but on the other hand, in Blake v. Friendly Ice Cream, the court recognized that the, quote, the question of independence is fundamental to every aspect of judicial inquiry under section 7.44. And if the question of independence is so fundamental to the analysis of section 7.44, why is it appropriate to disregard the standard of independence required under that statute when applying it? It doesn't make any sense. So if you're going to apply section 7.44 to a Massachusetts business trust, the standard of independence defined in that statute should apply. Second, the standard for independence under the ICA is a fundamentally different question as to the, whether or not someone's because the focus of the ICA, just like the first prong of the analysis under 7.44, is the vertical relationship between the trustee and the investment advisor. The ICA sets forth a statutory definition of independence for purposes of that relationship. When you're looking at a derivative claim, I look at that relationship, but that's not the only thing I look at. I look at the transaction itself. And in this case, the relevant inquiry isn't the relationship necessarily with the investment advisor, not just the relationship with the investment advisor, but the sideways relationship, the relationship with respect to the transaction itself. And in this case, all of the trustees served as fiduciaries of both the global allocation fund and the MLP fund. A decision to reject the investments or to stop the investments or to withdraw the investments from the MLP fund would have had a huge adverse impact on the MLP fund and therefore could have constituted a breach of fiduciary duties by those trustees in their capacity as fiduciaries to the MLP fund. The MBCL is very clear that a fiduciary relationship with a counterparty to the transaction constitutes a conflict of interest. That's in section 8.31 of the MBCL. Now the district court kind of threw that away saying, well, that only talks about conflict of interest. But the truth of the matter is the same requirement applies in section 7.44. The issue is that section 7.44 in Heron versus Brown says that one who has a business or interested director, that's the same standard that is articulated under section 8.31. It's the exact same point. Because you lack independence under the analysis of section 7.44, the entire burden shifting scheme of 7.44, who has to prove the reasonableness or unreasonableness is put on its head. The very specific issue, if you look at the last, the very end of the trial court, the district court's analysis, when the court rejected the challenges to the lack of citations, the lack of factual support for all the assertions in this report, the court said this, the lack of evidentiary support identified by plaintiff is insufficient to carry plaintiff's establishing serious questions about the good faith and reasonableness of the board's investigation. The correctness of the reports analysis and whether the conclusions are justified are squarely protected by the committees and the board's right to rely on the business judgment rule. That's only true if they qualify it as independent under the definition under 7.44. Without that presumption, if they did not apply, qualify as independent, then it was the defendant's burden to prove that. The defendant's burden to prove the reasonableness and good faith of the investigation, not a presumption that was adopted by the district court. So for that reason alone, it was outcome determinative. It ought to be reversed and the district court should be required to consider the action under the appropriate standard of section 7.44. Forgive me, I've forgotten this, Mr. Berry. Are you in the alternative asking us to certify something to the Massachusetts Supreme Court with respect to the 7.44 versus 2B issue? Absolutely. To the extent that the court harbors any doubt as to the application of the independent standard under section 7.44 to Massachusetts business trusts, it ought to certify to the Massachusetts Supreme Court the question of what did you mean when you said it's going to apply? All the statute or just part of the statute? When was the last time? Do they regularly take certified questions from federal circuit courts? I just don't know. There's a Massachusetts judicial rule that specifically allows for it and I've certainly seen it happen in several other jurisdictions that I'm familiar with. Probably not from the Fifth Circuit though. I don't know. I haven't dealt with it from the Fifth Circuit. I bet it's never happened. So I would like to reserve a couple minutes for a rebuttal. So if the court has any other questions, I'd like to save some time. Thank you, sir. Thank you. Thank you, Your Honor. Steve Topetsis, may it please the court on behalf of the appellees. The district court correctly determined that defendants established that a majority of the independent trustees of the Highland Global Allocation Fund constituting a quorum voted to reject plaintiff's demand that the board pursue legal action against the investment advisor and the trustee defendants and that the vote occurred after a reasonable and good faith investigation by the committee appointed by the board and after the board's consideration of that investigation. Therefore, consistent with Massachusetts law, the district court also determined that plaintiff's claims must be dismissed. In seeking to attack the sound reasoning of Judge Lynn, the appellant offers a for the first time in her reply brief, as well as efforts to revisit arguments or resurrect the arguments abandoned or disavowed in the opening brief. The appellant ignores the record before the district court, including the record of a thorough investigation of the demand and a good faith business judgment by the independent trustees that pursuit of the proposed claims would not be in the best interest of the fund or its shareholders. Before addressing some specific arguments made by the appellant, including arguments that opposing counsel raised for the first time in appellant's reply brief and that we respectfully submit based on a series of decisions of this court are waived and we cite U.S. v. Green and Senel v. Connick, among others. If it and overarching things that we respectfully submit shape this matter. This case involves a mutual fund and it arises in the context of the mutual fund industry. There are a number of federal and state laws that pertain specifically to mutual funds. Mutual funds are subject to a comprehensive, very substantial and detailed SEC administered and enforced regulatory regime pursuant to the Investment Company Act of 1940. Among the bedrock elements of the Investment Company Act is the requirement that a certain percentage of the board members, board of directors or board of trustees of a mutual fund, the persons who are disinterested or independent with respect to the investment advisor and the federal statute and implementing SEC rules and guidance specify what is required to be deemed disinterested or independent. These matters were covered specifically before the district court. The Investment Company Act and detailed regulatory regime and SEC apparatus governing mutual funds also recognize and reflect conventions and standard practices in the mutual fund industry, one of which is service by independent trustees on the board of multiple functions. It is not lost on Congress, which passed the Investment Company Act and which amends it from time to time. It is not lost on the SEC and not lost on the Massachusetts legislature. A significant percentage of mutual funds are organized as Massachusetts business trusts and Massachusetts has a specific statute to which Judge Duncan alluded earlier that addresses the treatment of mutual fund trustees under Massachusetts law. It provides that a trustee who is not an interested person with respect to the trust as defined in the Investment Company Act, quote, shall be deemed to be independent and disinterested when making any determination or taking any action as a trustee. And as Mr. Berry noted, that's section two of chapter 182 of the Massachusetts General Laws. Judge Lynn properly focused on that more specific statute and read it in harmony with the relevant slices of section 7.44 referenced by the plaintiff. I'd like to make one other related fundamental observation regarding the issues before the court. Appellant grounds much of her attack on supposed conflicts of interest that flow from the We're now hearing heard on reply and we heard during the argument today about a distinction between horizontal and vertical conflicts. And some of those things are new arguments that were raised initially on reply with respect to the impact of dividend reinvestment on the Master Limited Partnership Fund. As I noted earlier, we would submit those claims away. But in any case, the potential for such conflicts, which are endemic is endemic to the mutual fund industry, is what gives rise to the federal statutory and regulatory requirement of a certain disinterested trustee component on mutual fund boards. It has been recognized repeatedly by the courts. And with respect to no less significant a matter than the amount of compensation or advisory fee to be paid to the investment advisor, which must be approved by the independent trustees, the US Supreme Court has stated in Jones versus Harris, that informed business judgments of the independent trustees, persons who satisfy the definition under the Investment Company Act, are entitled to deference. This is consistent with a broad and overwhelming body of authority in Massachusetts and elsewhere. Regarding the ability of mutual fund directors and trustees to reject shareholder demands and obtain dismissal of derivative claims based upon a reasonable review and investigation, a good faith business judgment that the proposed litigation is not in the best interest of the fund and its shareholders. Significantly, this is also entirely consistent with and reflective of the analysis set forth in Judge Lynn's thoughtful work. With that as a backdrop, I'd like to address some of Helen's specific contentions attacks the district court's references to and reliance upon Section 2B. In particular, as Mr. Berry articulated a few moments ago, the pelicans that the district court failed to consider properly Section 7.44. These assertions are misguided. First, in the papers, appellant points to the fact that Section 7.44 was enacted after Section 2B, and thus is the more recent statute. This is of no moment. Statutes are to be read harmoniously, so as not to undercut one another. The Supreme Judicial Court of Massachusetts, the highest court in that Commonwealth, has stated that courts should presume that the legislature acts with full knowledge of existing laws when passing new ones, and be, quote, low-level to find that a prior statute has been superseded in whole or in part in the absence of express to that effect or of clear implication. That's the Alliance to Protect Nantucket Sound case. No such denouncement of Section 2B exists. Appellant has pointed to nothing that suggests 2B is not relevant for this court. Second, as Judge Lynn pointed out, and as I noted earlier, Section 2B is the more specific statute. It pertains to mutual funds organized as business trusts under Massachusetts law and the independent trustees of those funds. It is a particularized statute. It would be improper, we submit, to ignore the statute. Rather, we think, as the district court did, that the statute should be read in harmony with relevant pieces of Section 7.44. As the district court noted, nothing prohibits a court from analyzing the impact of a relationship on a mutual fund trustee's judgment under Section 7.44 by then looking at the specific principles of Massachusetts law governing the actions of requirements of both provisions. Appellants' attacks on this reasoning are strained. As Mr. Berry mentioned in an exchange with Judge Duncan a moment ago, the Halabian case, which I believe is the most recent reported case to consider questions of this type under Section 2B, although Halabian had a number of variations and a tortured procedural history with multiple trips to the Second Circuit and then a certified question to the court in Massachusetts, on remand, Judge Buchwald in the Southern District of New York considered this question and stated as follows, it does not seem unreasonable to interpret independent pursuant to Section 7.44 in light of Section 2B and, in turn, the Investment Company Act, and reading the statutes together is consistent with the norms of statutory interpretation. That court went on to say, the additional framework of Section 2B and the Investment Company Act merely provides further fixed guideposts for what constitutes independence under the laws of Massachusetts in the context of a business trust that is also an investment company under the Investment Company Act. These guideposts are not in tension with Section 7.44. That's precisely the context in which we're operating relative to this case. The fund is a business trust organized pursuant to Massachusetts law. The standard under 2B is not in tension with Section 7.44. That rationale in Halabian, the rationale employed by Judge Lynn in her order, undermines the centerpiece argument by the plaintiff. Any suggestion that Section 7.44 supplanted or abrogated Section 2B is groundless. Moreover, we submit that there's no reason, and plaintiff offers none, to view the statutes as inconsistent. The statutes and their comments use common language. They both speak in refer specifically to the earlier cases cited by the defendants below. The appellant has no basis, we submit, to contend that Section 2B is no longer valid. Thus, while the plaintiff below quibbles with some of the language used by Judge Lynn in referencing and relying on 2B, we submit that analysis under Section 7.44 is consistent with that under Section 2B, that the statutes are properly read in harmony, and that nothing raised by appellant argues for disturbing the ruling below. The appellant has relied and relied extensively below on the Blake case, which is addressed in our briefs, it's addressed in the district court's order. The Blake case is really it's not a mutual fund case. It's a case involving different kinds of relationships with corporate directors, and it involves a circumstance not where the demand was investigated by the board, but where a special litigation committee was appointed and given authority to make the decision relative to the demand. But even with respect to Blake, the district court did not And while the district court did not expressly embrace that articulation, Judge Lynn did say on page 18 of her order, in the first of her conclusion paragraphs, that the allegations against the trustees are collectively insufficient. So it's not totality of the circumstances, but it talks about the collective sufficiency or insufficiency of the allegations made and the showing made by the plaintiff. And in support of that statement, the district court cited Blake. So none of this suggests a disregard for the authorities or the arguments raised by the plaintiff. With respect to independence, more broadly, and I know opposing counsel has time on rebuttal. We've covered those issues extensively in our papers. And the district court spent a lot of time going through the individual circumstances, the arguments made by the plaintiff relative to particular independent trustees, whether they had a son who had a paid internship at the advisor or an affiliate, or they previously had been an employee of the advisor, or they work as an academic and receive a salary that the plaintiff regarded as modest in relation to the compensation for service as a mutual fund trustee and thereby may have some sort of conflict or may be subject to undue influence. Those are respectfully very strained arguments that the district court engaged and disposed of, I think, very thoroughly. We have covered those extensively in our briefs. The one thing I would say with respect to some of the relationships which were attenuated and remote in time, the district court properly noted and consistent with a history of cases that independence for demand consideration, potential business judgment dismissal purposes is considered at the time of the demand. And so the fact that someone had prior employment or previous dealings with affiliates, social relationships, those kinds of things don't tip the scales. But in any event, if you put aside many of those arguments by the plaintiff, we've got two trustees, the two who comprise the Demand Review Committee, Trustee Ward and Trustee Froelich, with respect to whom nothing is asserted by the plaintiff other than their service on the board with respect to multiple funds that constitute series of the trust. That's a circumstance that is routinely and consistently determined by courts not to create an independent issue in this setting. And possibly the boilerplate argument that if they agreed with the demand and determined the claim should be pursued, they would be authorizing claims against themselves. That contention is routinely rejected by the courts. There is no serious independent question, independence question with respect to any of the independent trustees, but particularly Messrs. Ward and Froelich, who constituted the Demand Review Committee. And significantly, as the district court referenced, the standard is whether the demand was addressed by a majority vote of the independent directors present at a meeting if the independent directors constituted a quorum. In this circumstance, your honors, a quorum defined by the bylaws of the trust and to the record on appeal at page 670. A quorum consists of one third of the trustees then in office, but not less than two. The record is clear that there were six trustees, one of whom Mr. Norris was deemed an interested trustee and did not participate in the consideration relative to the demand. The two trustees, Messrs. Ward and Froelich, clearly constitute a quorum. And with respect to the meeting at which the committee's recommendation was considered and voted upon, their two votes are enough. If you disregard the other three and say that they're tainted in some way, we submit that they're not, and the district court properly found that they were not. The two remaining trustees really are unassailable in terms of their independence, and their two votes are sufficient under the statute and consistent with Massachusetts law. The plaintiff covered a few other things and glanced against what I'm assuming are coming attractions with respect to his rebuttal remarks, so I'm going to anticipate a couple of things and then also try to run through a couple of other points quickly. With respect to the process, Mr. Berry referenced what he called failings of the report as one of his two pillars at the outset of his argument. Section 7.44 essentially codifies the business judgment rule, and the burden is on the plaintiff to allege with particularity facts rebutting the fund's filing. In this case, the record, and Judge Lynn speaks about it in her order, but you have the benefit of the record on appeal as well. The record reflects a responsible, thorough, and good faith process, a process that exhibits the hallmarks of reasonableness cited with approval in a long list of cases. The committee engaged deeply experienced independent legal counsel. The attorney spent nearly a thousand hours of attorney time investigating the matter and preparing a nearly 100 page detailed report, setting forth the process, the record, and the findings of the committee with voluminous exhibits, all of which were provided to the district court. The committee reached out through counsel to Mr. Berry and his client to solicit their input and any information they had that they believed may have bearing on the domain. The committee requested thousands of pages of documents, collected them, reviewed them. There were 16 meetings of the committee. There were 10 witness interviews, including interviews of the persons associated with the subject investment decisions and transactions in securities of the Master Limited Partner Fund. This was a principled, reasonable, good faith process, and the appellant now seeks to attack aspects of the process, the degree to which or whether emails or other documents were collected or reviewed, who attended interviews. I think the record is pretty clear that the members of the committee, one or both members of the committee, attended all of the interviews except for trustee interviews. Questions have been raised about interview notes or memoranda. Those were responded to by noting that those documents are privileged, but also noting that the report, which is before this court, contains in its text numerous detailed references to the content of witness interviews, and then questions about whether certain issues were addressed by the committee, like, for example, the permissibility and appropriateness of the subject investments. That's covered extensively in the report. The committee and its counsel reviewed all of these issues in detail. As the district court noted, these attacks on the report, the attacks on the process, the attacks on the business judgment, the good faith business judgment, informed business judgment reached by the trustees, at most, amount to matters as to which reasonable minds may differ. Respectfully, these are not matters or issues that call for this court to substitute its judgment or disregard the good faith judgment of the fund's independent trustees in rejecting the demand. Mr. Berry mentioned section 8.31 of the business corporation law in Massachusetts, just very quickly relative to that, and we've addressed it in our papers. It was addressed below as well. I note that the appellate did not address it in, we didn't address it in our opposition here because they did not raise it in their opening brief. In fact, not only did they not raise it in their opening brief or rely on it, the plaintiff expressly disavowed its relevance at page 49 of the opening brief. I will, your honor. Thank you. On page 49 of the opposition brief, the plaintiff says, finally, as explained above, the committee improperly relied on the standard for interested person as defined in the Investment Company Act. Section 7.44 applies to trustee defendants in analyzing a shareholder demand, not section 8.31 or the ICA. So their reliance and reference to section 8.31 is a bit mysterious. We submit it was waived by not having raised it earlier, and in any event, they disavowed it. We have your argument. Thank you. Mr. Berry, you have five minutes on the floor. Thank you, your honors. First, my friend spends a lot of time talking about industry practice and that it's standard in the mutual fund industry to have trustees serve on the boards of multiple funds. I don't dispute that, and that doesn't compromise their independence vis-a-vis the investment advisor, but that doesn't answer the question as to whether or not they're independent with respect to cross-fund investments on investments of other funds as to which they also serve as fiduciaries. That creates a unique situation where they do have an indirect interest in that transaction, and 7.44 gives them the opportunity to take advantage of the procedures under that section by asking a court to appoint an independent person to consider the litigation demand. They had an opportunity to still take advantage of it, and they chose not to. My friend talks about the section 7.44 embodying being a statutory codification of the business judgment rule. That's just incorrect. What 7.44 says is that if you don't qualify as independent, as that term is defined there, then you don't get the protections of the business judgment rule, and you have to affirmatively prove the reasonableness and good faith. There is no such presumption. It's a burden-shifting exercise. Finally, getting to the process, my friend talks about there's a lot about it's an extensive good process, and it's a long report. First, it's a long report that doesn't cite anything. Second, they say we got a lot of documents. The basic investigatory tool is nonpublic information. The vast majority, almost everything that was attached to that report, are public documents that I can get from Edgar. They had access to nonpublic documents. They had access to corporate emails and communications, contemporaneous corporate emails and communications, and they didn't bother to ask for a single one of them. The only nonpublic stuff in the report are board minutes and a memo from January of 2015 that purports to justify a decision to invest in the MLP fund the previous November. That memo contains an affirmative misrepresentation. That memo says that the prospectus of the funds authorized them to make the investment in the MLP fund because we can invest in any other Highland funds. That's just wrong. As we explained in our brief, as we explained to the trial court, the only disclosure in the prospectus that allows cross-fund investments allows investment of one Highland fund into an Highland exchange-traded fund. The MLP fund was not an ETF. It was not an exchange-traded fund. As a result, the only disclosures in the prospectus about cross-fund investments are restricted to ETFs, and the MLP was not an ETF. The trial court ignored that. My friend ignored that in briefing on appeal, and they offer no response to it today. Finally, oh, the committee members. He says the committee members attended all the interviews. That's just not true. We know that there's 10 interviews, but one committee member only attended four by phone and one in person, a total of five, and the other attended only four by phone. This is before COVID, so we don't know if the committee members actually participated in many of the interviews. With that, if the court has any other questions. Thank you very much, your honors. Okay, thank you. That's our final case for today, so this panel adjourns. Signing day.